IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Crim. No. 1:12-CR-0243** |
| **v.** | : | |
| | : | |
| | : | **Judge Sylvia H. Rambo** |
| **CARLOS C. HILL** | : | |

## M E M O R A N D U M

In this criminal case, Defendant was convicted of one count of possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e), related to his possession of a firearm in the Middle District of Pennsylvania. (Doc. 87.) Presently before the court is Defendant's post-trial motion, in which he seeks judgment of acquittal based on insufficient evidence, or in the alternative, a new trial due to, what he contends was, an improper evidentiary ruling and subsequent prosecutorial misconduct that had a substantial impact on the verdict. (Docs. 95 & 129.) For the reasons stated herein, Defendant's post-trial motion will be denied.

## I.        Background

On September 26, 2012, Carlos C. Hill ("Defendant") and Elijah U. Brown Jr. ("Brown") were charged in a single indictment with two counts related to an incident involving an unlawful handgun. (*See* Doc. 1.)[1] On January 29, 2013, Defendant filed two motions. The first motion, which sought to sever defendants (Doc. 46), was unopposed by the Government (Doc. 55) and was granted by the court (Doc. 58). The Government opposed the second motion, which sought to

---

[1] The two counts contained in the September 26, 2012 indictment were as follows: (1) Count I- possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e); and (2) Count II- possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). (Doc. 1.)

suppress two out-of-court pretrial identifications made by the alleged victim, Tamela Corish ("Corish"). (Doc. 48.) Following an evidentiary hearing, the court denied Defendant's motion to suppress (Doc. 57), finding that the identification procedure was not unnecessarily suggestive and that the totality of the circumstances established the independent reliability of Corish's identifications (Doc. 56, p. 21 of 21). On February 22, 2013, the court granted the Government's motion to continue trial (Doc. 54), and scheduled jury selection to commence at 9:30 a.m., on March 11, 2013 (Doc. 59).

On February 28, 2013, Defendant filed a motion in limine that requested the exclusion of photographs of Corish's injuries (Doc. 66), which was opposed by the Government (Docs. 76 & 77). During a conference call on the motion, defense counsel made an oral motion to bifurcate the issue of Defendant's prior conviction from the remainder of trial (*see also* Doc. 79), which was similarly opposed by the Government (*see also* Doc. 81). Finding that the photographs depicting Corish's injuries were irrelevant to the Government's case in chief, the court granted Defendant's motion in limine without prejudice to the Government to request admission during trial for rebuttal purposes or other relevant reasons. (Doc. 78.) The court also indicated its intention to bifurcate the charges, and the Government withdrew Count II, which had charged Defendant with the possession of a stolen firearm. (*See* Doc. 82.)

A jury trial on Count I, charging Defendant with possession of a firearm by a previously convicted felon, commenced on March 11, 2013.

## II.        Trial

Defendant moves for judgment of acquittal on the basis that the Government presented insufficient evidence to establish he had constructive possession of the firearm on July 13, 2012. Underlying his argument is his assumption the jury convicted him on its finding he had constructive, rather than actual, possession of the firearm. Defendant contends that two questions posed by the jury during its deliberations show both that the Prosecutor's summation exacerbated the damage of an erroneous evidentiary ruling, and that the court presented an improper jury instruction. The court will first present the facts established during the evidentiary phase of trial before discussing the challenged portion of the Prosecutor's summation and the court's jury instructions.

### A.    Facts

In the early morning of July 13, 2012, Corish and Rodney Nicholson ("Nicholson") left a party at a family member's house. (Tr. 65.) Corish and Nicholson drove separately; Corish drove Nicholson's vehicle, a silver BMW, and Nicholson drove Corish's Green Dodge Stratus. (*Id.*) On their way home, the two stopped at the City Gas and Diesel station, located on State Street in the City of Harrisburg, to purchase cigarettes. (*Id.*) Both Nicholson and Corish noticed a green SUV ("SUV") upon entering the gas station's parking lot. (Tr. 66.) Nicholson parked and exited the Dodge Stratus to enter the convenience store, leaving the vehicle unlocked with the keys in the ignition. (Tr. 68, 100.) From inside the BMW parked to the right of the Dodge Stratus, Corish saw a young male exit the SUV and enter the driver's seat of the parked Dodge Stratus. (Tr. 101.) In an attempt to stop the thief, Corish jumped out of the BMW and grabbed hold of the Dodge Stratus'

door handle, yelling at the young male driver to stop. (*Id.*) Corish's attempt was unsuccessful, and she was dragged for a short distance before she let go of the door handle. (*Id.*) The young male continued driving the Dodge Stratus out of the parking lot and onto the roadway. (*See* Tr. 68.)

Nicholson exited the store and saw Corish laying on the ground and the Dodge Stratus exiting the parking lot followed by the SUV. (*Id.*) They entered the parked BMW: Nicholson sitting in the driver seat and Corish sitting in the front passenger seat. (Tr. 68, 71.) Nicholson and Corish followed directly behind the SUV, which was following the Dodge Stratus. (Tr. 71.) At some point, the Dodge Stratus turned onto a side street, out of sight from Corish and Nicholson. (*Id.*)

Eventually, the SUV parked on the 1600 block of Park Street, and Nicholson stopped the BMW in the street parallel to the SUV. (Tr. 71.) A man, whom Corish and Nicholson later identified as Brown, exited from the driver's position of the SUV, and Nicholson demanded, across Corish and through the passenger window, for Brown to tell him the location of the Dodge Stratus. (Tr. 72-73.) Another man exited the vehicle from the passenger side and, while standing on the sidewalk, pointed a handgun at Nicholson and Corish, and directed them to leave. (Tr. 73.) Worried they may be injured, Corish and Nicholson complied. (*Id.*)

In response to an emergency call made by Corish, Harrisburg City police officers located the SUV parked on the 1600 block of Park Street, at which time the officer in charge directed the vehicle be towed to the police station. Although Corish gave a statement to the responding officer, Nicholson left the area due to his being on probation, and the fact that he was driving despite his having a suspended license. (Tr. 77-78.) During the investigation, the Harrisburg Police

4

Bureau detectives determined that the SUV was registered to Robert Hearn ("Hearn"), who resided on the 1600 block of Park street. (Tr. 147.) Detective Christopher Krokos spoke with Hearn, and determined that Hearn had loaned his vehicle to Brown at the time of the incident. (Tr. 161.) Detective Krokos subsequently spoke with Brown, and was ultimately given consent to search Brown's residence. (Tr. 149.) A silver handgun and magazine were found behind a mattress in Brown's bedroom. (Tr. 150.) During Detective Krokos's conversation with Brown, Brown implicated Defendant in the Park Street encounter. (Tr. 160.)

Based on the investigation, Detective Timothy Carter utilized JNET, an internet-based law enforcement website that allows access to records and information, and compiled a photographic array that contained a photograph of Defendant in addition to seven photographs of unrelated individuals with similar physical attributes. (Tr. 180; Gov. Ex. 11; *see also* Doc. 56, p. 6 of 21 (explaining that, to create the array, JNET generates a large pool of photographs of individuals who possess similar physical attributes to those of the subject, from which the user selects the seven photographs to include based on his own judgment).) The array was based on Defendant's name learned during the course of the investigation, rather than on the description given by Corish. (Tr. 180.) Corish selected Defendant's photograph from the array and identified him as the person who pointed the gun at her. (Tr. 110-11.)

Detective Krokos arrested Defendant on September 6, 2012. (Tr. 160.) After being advised of his rights, Defendant admitted that he was with Brown during the early morning hours of July 13, 2012, that he was present when a juvenile male stole the Dodge Stratus (Tr. 161), and that he was present when Corish and

Nicholson confronted him and Brown on Park Street (Tr. 162). However, according to Defendant's statement, Brown was the individual who had the gun and told Nicholson and Corish to leave. (Tr. 162.)

Brian LePrell, an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives who has been employed by law enforcement for over thirteen years, interviewed Corish on November 21, 2012. (Tr. 196-97.) Agent LePrell presented Corish with another photographic array, which he also created by inputting Defendant's name and information into the JNET system.[2] (Tr. 198; Gov. Ex. 13.) In addition to Defendant's photograph, the array contained the photographs of seven individuals who had similar physical characteristics to those of Defendant. (*See* Tr. 198-200.) Corish again identified Defendant as the individual who pointed the gun at her and Nicholson. (Tr. 111-12.) At trial, Agent LePrell further testified that he presented Corish with a second photographic array, created by inputting Brown's name into JNET. (Tr. 202; Gov. Ex. 14.) Corish selected Brown's photograph and identified him as the driver of the SUV. (Tr. 113-15, 203.) Although Nicholson accompanied Corish to this interview, no one encouraged Corish to select Defendant's photograph. (Tr. 200-01.)

In his case-in-chief, and after Brown became unavailable due to the invocation of his Fifth Amendment rights (*see* Tr. 60-62), Defendant presented a letter, written by Brown while he was incarcerated, which was entered into evidence through Michelle Taylor, a corrections officer at Dauphin County Prison. (Tr. 221.) Taylor testified that, on July 17, 2012, she intercepted a written communication from

---

[2] Agent LePrell explained that ATF "adopted" the case, and he received the benefit of obtaining information from the local police department. (Tr. 197.)

Brown to another inmate, Wesley Garner, an individual whom Brown identified as a co-defendant.[3] (*See* Tr. 223-25.) The handwritten letter, which was permitted to be introduced with defense counsel's understanding that the Government would then have an opportunity to present impeachment evidence in rebuttal (Tr. 167-68), was read into the record in its entirety, and provided, in pertinent part, as follows:

> [Y]o, I hollered at my folks on the phone this morning.
> Dem people trying give a nigga 15 to 30 years for da gun.
> They said they knew it wasn't mine because they got
> peoples talking. My thing is, I ain't gone flip but I need
> you to take the gun charge. You ain't got no record. So
> they won't even give you three months for the shit. I need
> you to do this little brah. A nigga just did 10 years. . . .
> When they spring me, brah, I'll be on Rizz and Yankee,
> brah. You got my word, nigga. I'll sign and have you out.

(Tr. 226, 228.) The Government proceeded, in its rebuttal, to introduce into the record, through the testimony of Detective Krokos, a prior inconsistent statement in the nature of Brown's formal statement given to Detective Krokos during an interview following Brown's arrest. (Tr. 229-233.) The portion of Brown's statement, presented for impeachment purposes over Defendant's objection, was read into the record by the Prosecutor as follows:

> [By AUSA]:
>
> [You (Detective Krokos) ask Brown,] and then you go
> where? [And Brown] responded, we [(he and Defendant)]
> went right back to Park Street. . . . [T]hen they [(Corish and
> Nicholson)] pulled up behind us. . . . I exited the vehicle

---

[3] Taylor testified that, on July 17, 2012, she was doing rounds on a cell block at Dauphin County Prison. (Tr. 222-23.) Brown requested Taylor deliver a note he had written to Garner. (Tr. 223-24.) Taylor acquiesced, and delivered the note to Garner. (Tr. 224.) Garner responded, again using Taylor as the conduit through which the note traveled; however, Taylor intercepted the correspondence and alerted her superiors to the content thereof. (Tr. 225.)

and go toward my house. And, uh, her and - - her and [Defendant] exchange words. . . . [ and Defendant] flashes a pistol. . . . a black, uh, one of them black nine [millimeter pistols]. . . . And you [(Detective Krokos)] ask, who - - how did that gun get in your car? And [Brown] responds, um, Bo [had a gun]. . . . Then you [(Detective Krokos)] ask, and then how did [Defendant] get the gun? Or did [Defendant] have his own gun? And [Brown] says, [Defendant] never had his own gun.

And then you ask, so how did [Defendant] get Bo's gun? And [Brown] responds, cause Bo gave it to him . . . to scare the lady off. . . . a few minutes after the lady pulled up.

* * *

[Bo] handed [the gun] to [Defendant] when they got out the car. . . . And then you [(Detective Krokos)] ask, and that's when [Defendant] flashed the gun at the lady? How did he flash it to her? . . . And then [Brown] responds, when I seen - - when I seen like when he lift up his shirt.

And then you ask, [Defendant] lifted up his shirt? And [Brown] responds, and lifted up his shirt. You [(Detective Krokos)] asked, did he pull the gun out? And [Brown] says, I don't think he - - I'm not sure he pulled it out or not, but I seen him lifting up his shirt and uh. You asked, did he have his hand on the gun? And [Brown] says, no. I can't really say, like I just know that he flashed it. And then you ask, what did he say to her? And [Brown] responds, just get, get outta here[.]

(Tr. 231-33.)

At trial, the parties stipulated that Defendant had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, and that the gun recovered in Brown's room was operational and considered a firearm, within the meaning of 18 U.S.C. § 921(a)(3), and traveled in interstate commerce, within the meaning of 18 U.S.C. § 922(g)(1). (Gov. Ex. 4.)

**B.   Prosecutor's Summation and Jury Instructions**

Directly preceding the Government's summation, the court reinforced the limited purposes of permitting the introduction of Brown's statement:

> I allowed that portion of the police interview that you read,
> the last thing, only as impeachment, not for substantive
> evidence.  Just so you are carful when you argue that.

(Tr. 241.)  Nevertheless, toward the end of her summation, the Prosecutor stated the following:

> So [Brown] writes this letter to another inmate asking him
> to take the charge for him.  But you may also consider that
> in response to the letter, you heard Detective Krokos take
> the stand on rebuttal; and discuss that several days prior to
> that letter being written, that *Mr. Brown had given a*
> *statement in which he says that Mr. Hill had the gun at the*
> *time of the incident with Ms. Corish.*
>
> *And that's what Mr. Hill was charged with here today.*
> *And that's what we're asking you to convict him of,*
> *possessing the gun at the time that Ms. Corish and Mr.*
> *Nicholson have described that the gun was pointed at them.*
> Ladies and gentleman, we all make choices in life.  And
> those choices have consequences.

(Tr. 250 (emphasis supplied).)  Defense counsel objected to this portion of the Prosecutor's remarks, arguing that the Prosecutor improperly urged the jury to consider the statement for substantive purposes.  (Tr. 250-51.)  In response, the court provided the following curative instruction:

> Ladies and gentleman, I think the last piece of testimony
> that may have been presented to you was a statement taken
> from Mr. Brown by Detective Krokos.  That statement is
> used for a specific purpose.  And that is, it was used to
> show you that there was a prior inconsistent statement and
> that you can use that in determining the credibility of the
> witness, Mr. Brown.  That is all.  It's not substantive proof

9

> that he is admitting, do you understand, or that he is saying
> Mr. Hill had the gun.
>
> It is only used to show an inconsistent statement made by
> this person. And you can consider that in determining
> whether to believe his testimony or not.

(Tr. 251.) During its final charge, the court again instructed the jury on the limited
permissible use of Brown's statement:

> Now you have heard the testimony of certain witnesses.
> You have also heard that before this trial they made
> statements that may be different from their testimony in
> this trial. It is up to you to determine whether these
> statements were made and whether they were different
> from the witness' testimony in this trial. These earlier
> statements were brought to your attention only to help you
> decide whether to believe the witness's testimony that was
> presented here at trial.
>
> You cannot use it as proof of truth about what the witness
> said in an earlier statement. You can only use it as a way
> of evaluating the witness's testimony presented in this trial.

(Tr. 287.)

### C. <u>Jury's Questions and the Court's Responses</u>

Defendant challenges the jury's verdict, arguing that there was "neither
competent nor sufficient evidence of constructive possession of the [firearm]." (Doc.
129, p. 9 of 10.) Underlying Defendant's challenge is the assumption that the jury
convicted on constructive – rather than actual – possession. (*See* Doc. 141, p. 2 of
9.) As the basis of this assumption, Defendant cites the two questions from the jury
to the court requesting clarification.

Initially, the court notes that the jury was instructed on knowing
possession, which included reference to the concept of constructive possession.

Before jury selection, the Government requested the model instruction regarding knowing possession, to which Defendant did not object. (*See* Tr. 301-02.)[4] The instruction, which was included in the final jury charge, was substantially in the form of the Third Circuit's model jury instruction for knowing possession, and provided in its entirety as follows:

> Now to establish the second element of the offense, the Government must prove that Carlos Hill possessed the firearm that's in the indictment. To possess means to have something within a person's control. The Government does not have to prove that Carlos Hill physically held the firearm; that is, that he had actual possession of it. As long as the firearm was within Carlos Hill's control, he possessed it.

> If you find that Hill either had actual possession of the firearm or had the power and intention to exercise control over it, even though it was not in Carlos Hill's physical possession, that is that Carlos Hill had the ability to take actual possession of the object when Hill wanted to do so, you may find that the Government has proved possession.

> Possession may be momentary or fleeting. The law also recognizes that a person may have possession [that] may be sole or joint. If one person alone possesses a firearm, that is sole possession. However, more than one person may

---

[4] After the court provided counsel with copies of the jury charge, both counsel for the Government and counsel for Defendant indicated they had no objections or additions to the charge:

| The Court: | First of all, may I have the Government's objections or additions to the charge? |
| Ms. Taylor: | Your Honor, we have no objections or additions to the charge. |
| The Court: | Mr. Thornton, for the Defendant? |
| Mr. Thornton: | None for the Defendant, Your Honor. |

(Tr. 273.)

have the power and the intention to exercise control over a firearm. This is called joint possession.

If you find that Carlos Hill had such power and intention, then he possessed the firearm even if he possessed it jointly with another. Mere proximity to the firearm or mere presence on the property where it is located or mere association with the person who does control the firearm or property is insufficient to support a finding of possession.

Proof of ownership of the firearm is not required. The Government must prove that Carlos Hill knowingly possessed the firearm described in the indictment. This means that Carlos Hill possessed the firearm purposely and voluntarily and not by accident or mistake. It also means that Carlos Hill knew the object was a firearm.

(Tr. 291-92.)

During the course of its deliberation, the jury sent the court two questions, both of which concerned the central issue for the jury to decide, namely whether Carlos Hill possessed the firearm. The first question from the jury was: "Clarification of the definition of possession as related to page 38 of the criminal jury charge. Does the gun have to be on his person for possession? If no what constitutes control of the gun?" The court expressed to counsel that it believed the answer to that question was in the negative, but defense counsel objected on the basis that he did not believe evidence was presented to support anything other than actual possession. (Tr. 302.) Nevertheless, having presented the knowing possession instruction, which included the definition of constructive possession, the court believed it improper to misstate the law by complying with defense counsel's request to answer in the affirmative. Accordingly, the court gave the following written answer:

The charge is felon in possession of firearm at some time during the incident. The possession may be actual or direct – that is, he physically had the gun on his person. It could also be possessed by what is called "constructive possession" – that is that he had the ability to take actual possession when he wanted to do so.

It is up to you to decide whether the evidence supported either type of possession.

The second question from the jury was: "If we believe the gun and the defendant were in the SUV together does that constitute constructive possession according to the law?" (Tr. 303.) The court gave the following written response, without objection from either the Government or Defendant:

Constructive possession of the gun in question requires proving, beyond a reasonable doubt: (1) Defendant had knowledge of the gun's existence; (2) Defendant had the power to exercise dominion and control over the gun; and (3) Defendant had the intent to exercise dominion and control over the gun. The mere potential ability to exercise dominion and control does not establish constructive possession absent the intent to exercise it.

(*See also* Tr. 304.) The jury returned a guilty verdict 46 minutes later.

## III.          Discussion

Defendant challenges the jury's verdict on the basis of the sufficiency of evidence presented at trial, and argues that his rights were jeopardized by an erroneous evidentiary ruling compounded with prosecutorial misconduct during the Government's summation, which he contends had a substantial impact on the outcome of trial and undermines the confidence in the jury's verdict. The court will address Defendant's arguments challenging the evidence presented at trial before addressing his other claims of error.

**A.      Crime of Conviction**

As an initial matter, the court will set forth the elements the Government was required to prove in order for the jury to return a guilty verdict on the one charge presented to the jury, namely possession of a firearm by a convicted felon, in violation of 18 U.S.C. 922(g)(1).  In order to establish a violation of Section 922(g)(1), the government must establish each of the following elements beyond a reasonable doubt: (1) the defendant has been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) the defendant knowingly possessed the firearm in question; and (3) the firearm had traveled in interstate commerce. *United States v. Higdon*, 638 F.3d 233, 239-40 (3d Cir. 2011) (citing *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000).

**B.      Judgment of Acquittal under Fed. R. Crim. P. 29**

Defendant's argument in support of his motion for judgment of acquittal based on the insufficiency of evidence assumes that the jury returned a guilty verdict finding that he had constructive – rather than actual – possession of the firearm.  The court finds this to be an improper assumption.  In any event, a challenge to the sufficiency of the evidence is evaluated under Federal Rule of Criminal Procedure 29.

**1.      Legal Standard**

The standard for granting a motion for judgment of acquittal based on insufficient evidence to sustain a conviction is quite stringent.  *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008); *United States v. Briscoe-Bey*, Crim. No. 03-cr-0018, 2004 WL 555405, *1 (D. Del. Mar. 19, 2004).  The defendant bears a heavy burden of demonstrating that relief is appropriate, and the granting of relief under

Rule 29 is "confined to cases where the prosecution's failure is clear." *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984) (citing *Burks v. United States*, 437 U.S. 1, 17 (1978)); *see also United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (citing *Soto*, 539 F.3d at 194) ("[A]n insufficiency of the evidence claim places a heavy burden on the [challenger] because [the court] will only find the evidence insufficient when the prosecution's failure is clear.").

The district court must view the evidence in the light most favorable to the prosecution to determine "whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006) (citing *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)). If a challenge to a jury verdict is the sufficiency of the evidence produced at trial, the court "must be ever vigilant . . . not to usurp the role of the jury" by weighing the evidence or making credibility determinations, or by substituting its judgment for that of the jury. *Mercado*, 610 F.3d at 845; *see also United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). Relief is only appropriate "if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (quoting *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983)). Stated another way, the court must determine whether a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all of the elements of the offenses.

2. **Application**

In the instant case, the parties stipulated that the firearm was operational and considered a firearm for purposes of 18 U.S.C. § 921(a)(3), that the firearm affected interstate commerce within the meaning of 18 U.S.C. § 922(g)(1), and that, prior to July 13, 2012, the Defendant had been convicted in a Commonwealth of Pennsylvania court of a crime punishable by imprisonment for a term exceeding one year, within the meaning of 18 U.S.C. § 922(g)(1). Thus, the only issue before the jury was whether Defendant knowingly possessed the firearm. With regard to this issue, the Government and Defendant presented two competing theories: the Government arguing Defendant was the individual who pointed the firearm at Corish, and Defendant arguing Brown was the individual who pointed the firearm at Corish. The jury was charged with answering the classic whodunit.

The Government presented the testimony of two eyewitnesses, Corish and Nicholson, who each identified Defendant as the person who pointed the gun at them on July 13, 2012. Despite defense counsel's zealous efforts to impeach the witnesses' testimonies and undermine the accuracy of their identifications, the jury was entitled to disregard counsel's efforts and credit the identifications. Specifically, shortly after the incident occurred on July 13, 2012, Corish selected Defendant's photograph from an array and identified him as the shooter. Several months later in November 2012, Corish again selected Defendant's photograph from a second array and again identified him as the gunman. Corish identified Defendant as the gunman for a third time during trial. Nicholson corroborated Corish's testimony regarding the identity of the gunman.

Moreover, Defendant's post-arrest statement, introduced through Detective Krokos's direct examination testimony, corroborated nearly all of Corish's

and Nicholson's account of the incident. (*See* Tr. 161.) The sole inconsistency created the question posed to the jury, as Defendant told Detective Krokos that Brown was the individual who pointed the gun at Corish. Accordingly, there was more than sufficient evidence to support a finding that Defendant knowingly possessed the firearm on July 13, 2012.

## C.    Motion for a New Trial under Fed. R. Crim. P. 33

Despite this direct evidence, which is certainly enough to support the jury's judgment of conviction on the felon in possession charge, Defendant argues that the evidence was insufficient to support the jury's verdict on the basis of constructive possession.[5] As stated, Defendant argues the jury must have convicted him on a constructive possession theory based on the questions that were posed by the jury during its deliberation. Defendant ties this supposition to the Government's presentation of a statement made by Brown in rebuttal as a prior inconsistent statement.

### 1.    Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although the rule does not define "interests of justice," the term has been interpreted to permit a new trial in a variety of situations

---

[5] Because the court concludes that there existed more than sufficient evidence to sustain the jury's verdict with respect to the crime of conviction, *see supra* Part III.B.2, it need not address whether there was sufficient evidence to support a conviction on the basis of constructive possession. Nevertheless, in addressing Defendant's motion, the court will assume, without deciding, that there was insufficient evidence to sustain a conviction on the theory of constructive possession. As will be explained in greater detail below, whether there was sufficient evidence to sustain a verdict based on a constructive possession theory is not dispositive to the court's disposition of the motions *sub judice*. *See infra* Part III.C.3.

in which the "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989); *see also United States v. Neff*, 343 F. Supp. 978, 980-81 (E.D. Pa. 1972).

The defendant bears a heavy burden to demonstrate a new trial ought to be granted because the law presumes the verdict against him to be valid. *See United States v. Mote*, Crim. No. 3:11-cr-0194, 2013 WL 1899811, *1 (M.D. Pa. May 7, 2013) (citing *United States v. McCourty*, 562 F.3d 458, 475-76 (2d Cir. 2009)). A new trial should only be granted sparingly and in exceptional situations. *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)); *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). Exceptional situations include those in which trial errors, "either individually or in combination, 'so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993); *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 719-20 (E.D. Pa. 2009). Exceptional situations also include those in which the jury verdict is so against the weight of the evidence that the court "believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). Thus, a new trial is only warranted if (1) after weighing the evidence, the court determines that there has been a miscarriage of justice, or (2) the court determines that trial errors had a substantial influence on the verdict. *United States v. Stewart*, 325 F. Supp. 2d 474, 485 (D. Del. 2004).

## 2. <u>Admission of Brown's Statement to Detective Krokos</u>

Defendant's request for a new trial arises from an evidentiary ruling, in which the court permitted the Government to introduce Brown's statement to Detective Krokos. That statement was offered for the purpose to impeach the hearsay declarant with his own prior inconsistent statement. As stated, during his case-in-chief, Defendant introduced a jailhouse letter written by Brown to another individual, in which Brown requested the other individual "take the gun charge." The letter, which was admitted under Federal Rule of Evidence 804(b)(3) via Corrections Officer Taylor due to Brown's becoming unavailable as a result of his invoking his Fifth Amendment rights, was offered to prove Brown was the individual who pointed the gun at Corish on July 13, 2012. It was from this letter that Defendant requested the jury infer that Brown requested Wesley Garner to "take the rap for [the gun]" because Brown was "the one that pulled that gun."[6] (Tr. 255.) Brown's statement, entered into evidence for purposes of impeaching Brown's letter, was admitted pursuant to Federal Rule of Evidence 806, which provides, in part, as follows:

---

[6] The portion of defense counsel's summation incorporating Brown's letter was as follows:

The person who puts Carlos Hill's name in here is Elijah Brown, the same person who's trying to get Wesley Garner to take the rap for it.
You can always consider people's actions after the event if they show consciousness of guilt. If you are asking somebody else to take the rap for you, you're showing consciousness of guilt.
You're asking someone else to come into court and perjure themselves on your behalf. Why would Elijah Brown do that if he was innocent? If he was an innocent man, if he was not the one that pulled that gun, would he need somebody else to come in here and lie for him or would he just do what Carlos Hill did, who sits here as an innocent man? Make [the Government] prove something.

(Tr. 254-55.)

> When a hearsay statement . . . has been admitted in
> evidence, the declarant's credibility may be attacked, and
> then supported, by any evidence that would be admissible
> for those purposes if the declarant had testified as a
> witness. The court may admit evidence of the declarant's
> inconsistent statement or conduct, regardless of when it
> occurred or whether the declarant had an opportunity to
> explain or deny it.

Fed. R. Evid. 806. The Notes of the Advisory Committee explain the rationale

behind Rule 806: "The declarant of a hearsay statement which is admitted into

evidence is in effect a witness. His credibility should in fairness be subject to

impeachment and support as though he had in fact testified." Fed. R. Evid. 806 cmt.

Moreover, that a prior inconsistent statement tends to incriminate the defendant in

the commission of the offense for which he is being tried does not preclude the use

of the impeachment evidence. *See Lewis v. Yeager*, 411 F.2d 414 (3d Cir. 1969) (per

curiam). Where a defendant himself calls as a witness in his defense an alleged

confederate who thereupon gives testimony tending to exculpate the defendant, the

prosecution is then permitted to impeach the witness by introducing into evidence

the witness' prior inconsistent statement incriminating the defendant, because the

defendant himself had created the occasion for the use of the incriminating prior

statement of the alleged confederate. *Id.* However, where inconsistency is not

demonstrated, impeachment evidence is properly rejected. *United States v. Wali*, 860

F.3d 588, 591 (3d Cir. 1988) (citing *United States v. Hale*, 422 U.S. 171, 176

(1975)). Where impeachment evidence is admitted, the court must ensure that the

jury is instructed on the limited use of the statement.

Defendant now argues that Brown's statement to Detective Krokos was

improperly introduced as impeachment evidence, reasoning that the substance of the

jailhouse letter and post-arrest statement were not inconsistent. The court finds this argument unpersuasive. Even though Brown never stated in his letter that he was the individual who pointed the gun at Corish, Defendant used the letter to show that Brown was the individual who "pulled that gun" (Tr. 255), thereby exculpating Defendant. Thus, Brown's statement to Detective Krokos that implicated Defendant as the individual who pointed the gun at Corish was inconsistent with the letter introduced asking the recipient to "take the gun charge."[7]

For these reasons, the court finds that Brown's statement to Detective Krokos was inconsistent with his jailhouse letter requesting that the recipient "take the gun charge." In addition, the court concludes that the statement was properly admitted, and that the court adequately instructed the jury to its limited purpose. For these reasons, the court does not find a trial error had a substantial influence on the verdict or that a miscarriage of justice resulted.

### 3. Conviction on Actual Possession

Defendant next apparently contends that the court provided the jury with improper instructions because, although the Government's case centered on Defendant's actual possession of the firearm, the court nevertheless instructed the jury with the standard jury instruction for knowing possession, which, as stated, included, in pertinent part, the following:

> The Government does not have to prove that Carlos Hill physically held the firearm; that is, that he had actual possession of it. As long as the firearm was within Carlos Hill's control, he possessed it.

---

[7] The Government correctly identifies the possibility that both Defendant and Brown are guilty of possessing the same firearm on July 13, 2012, if Defendant pointed the gun at Corish and then Brown hid the gun in his bedroom. (Doc. 138, p. 9 of 16.)

> If you find that Hill . . . had the power and intention to
> exercise control over [the firearm], even though it was not
> in Carlos Hill's physical possession, that is that Carlos Hill
> had the ability to take actual possession of the object when
> Hill wanted to do so, you may find that the Government
> has proved possession.

(Tr. 291.)  Defendant did not object to the court's instructing the jury with the model instruction.  (Tr. 273.)  Although a jury should not be instructed on an issue for which there is so little evidentiary support that no rational jury could accept it, *United States v. Brooks*, 394 F. App'x 953, 955 (3d Cir. 2010) (citing *Tammi v. Porsche Cars N. Am., Inc.*, 536 F.3d 702, 708 (7th Cir. 2008)), a district court's superfluous instruction on a crime will not be considered an abuse of discretion where the charge as a whole fairly and adequately submits the issue in the case to the jury, *Id.* (citing *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995)). Although it would be preferable for the court to give an instruction removing an unsupported alternative theory of conviction from the jury's consideration, the failure to do so does not provide an independent basis for reversing an otherwise valid conviction.  *Griffin v. United States*, 502 U.S. 46, 60 (1991).  The instruction, as given, does not create a basis to vacate the jury's verdict, and the court is persuaded that the jury was neither misled nor confused by the arguably superfluous instruction.

Moreover, despite Defendant's argument to the contrary, the two questions posed by the jury did not make clear that it convicted on a theory of constructive possession.  (*See* Doc. 129, p. 3 of 10.)  Although both questions implicated the concept of constructive possession, all the questions demonstrate was that the jury was attempting to understand the law upon which it was instructed.  In

answering the questions, the court was unwilling to appease defense counsel's request that it "instruct [the jury] that there must have been at least some point where [Defendant] actually possessed the weapon." (Tr. 300.) Rather, the court responded with a legally accurate answer to each question. Answering the jury's question as Defendant suggested would amount to misstating the law. The court will not engage in speculation regarding the jury's deliberative process.

Defendant also argues that the jury improperly used Brown's statement to Detective Krokos as substantive evidence in support of its convicting Defendant. (Doc. 129, pp. 3, 8 of 10.) This argument similarly lacks merit. Defendant contends that "the only evidence of any 'constructive possession' came from the statement of Elijah Brown who told police the gun was given to Carlos Hill by a person named 'Bo' who had been riding in the car with them." (*Id.* at pp. 7-8 of 10.) This statement does not support anything other than actual possession, even assuming *arguendo* that the jury disregarded the court's instruction and improperly used the statement for its substantive rather than impeachment value. Indeed, even the improper use of the statement supports the finding that Bo gave actual possession of the firearm to Defendant. Furthermore, the court is confident the jury adhered to the court's instructions that Brown's statement could only be used to show the inconsistency in his statements.[8] Thus, the jury's questions do not support a conclusion that the jury convicted Defendant on a constructive possession theory.

Moreover, that the instruction contained alternative theories of possession does not render the instruction improper. As noted above, the model

_____

[8] The court does not consider its failure to submit to the jury a special verdict form asking it to unanimously vote on whether Defendant actually or constructively possessed the firearm at issue to be a plain error that was obvious and affected Defendant's substantial rights.

instruction concerning knowing possession contains alternative theories of guilt, instructing the jury on the concepts of actual and constructive possession. When a criminal defendant challenges a conviction in which there exists a possibility that the defendant was convicted on more than one theory of guilt and the jury returned a general verdict, the court applies the holding of *Griffin*, 502 U.S. 46. *See United States v. Syme*, 276 F.3d 131, 144 (3d Cir. 2002). Generally, when a jury returns a general verdict and the evidence is insufficient to support a conviction on one legal theory but sufficient to convict on another theory, the reviewing court should let the verdict stand, assuming that the jury convicted on the factually sufficient theory. *Syme*, 276 F.3d at 144 (citing *Griffin*, 502 U.S. at 49-50). However, when one of two or more alternative theories supporting a count of conviction is either unconstitutional or legally invalid, the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory. *Id*. (citing *Griffin*, 502 U.S. at 56). This is because "a jury is presumed to be able to distinguish factually sufficient evidence from factually insufficient evidence," but "is not presumed . . . to be able to distinguish accurate statements of law from inaccurate statements." *Id*. (citing *Griffin*, 502 U.S. at 59). A legal theory is invalid when "the indictment or the district court's jury instructions are based on an erroneous interpretation of law or contain a mistaken description of the law." *Id*. at 145. However, a legal error in this context does not include a conviction based on insufficient evidence. *Id*.[9]

---

[9] *Griffin* made clear that claims regarding the insufficiency of evidence do not fall into the categories of a legally invalid or an unconstitutional basis for conviction. The Court explained:

In one sense "legal error" includes inadequacy of evidence – namely when the

(continued...)

Defendant's argument challenges the legal sufficiency of the evidence to support a conviction for the crime based on a constructive possession theory. This is not a case where one theory presented to the jury in support of conviction was invalid; rather, this is a case where the evidence supported arguably only one legal theory of the two encompassed by the jury instruction.[10] The jury received an accurate instruction on the law. Despite the jury's questions, the court is persuaded that the jury was not misled or confused by the instructions, and that it was able to distinguish factually sufficient evidence.

Based on the foregoing, and in light of the overwhelming evidence presented at trial that Defendant was the individual who pointed the firearm at Corish on July 13, 2012, the court is satisfied that the jury properly considered the evidence and convicted Defendant of possession of a firearm by a convicted felon based on the theory of actual possession.

### 4. Prosecutor's remarks

As a link between Defendant's argument that Brown's statement provided the opportunity for the jury's convicting him on the basis of constructive possession, Defendant argues that the Prosecutor committed misconduct by using

---

[9](...continued)
phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense "legal error" occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense–a more natural and less artful sense–the term "legal error" means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence. . . . [W]e are using "legal error" in the latter sense.

*Syme*, 276 F.3d at 145 (citing *Griffin*, 502 U.S. at 59).

[10] *See supra* note 5

Brown's statement as substantive evidence in her summation, in disregard for the court's admonishment of the statement's limited purpose. The court agrees that the Prosecutor's remarks can be interpreted as requesting the jury to improperly use Brown's statement, but disagrees that the Prosecutor's conduct requires the verdict be vacated or warrants a new trial.

Due process of law encompasses the right to a fair trial. "Prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). For due process to have been offended, "the prosecutorial misconduct must be of sufficient significance in the denial of the defendant's right to a fair trial." *Id*. (internal quotation marks omitted) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, the court is required to examine those remarks in the context of the whole trial. *Ramseur v. Beyer*, 983 F.2d 1215, 1239 (3d Cir. 1992) (citing *Greer*, 483 U.S. at 766). Thus, the remarks must be sufficiently prejudicial in the context of the entire trial to violate the defendant's due process rights. *See United States v. Morena*, 547 F.3d 191, 193-94 (3d Cir. 2008). In making this determination, the court examines any curative instructions, the weight of the properly admitted evidence against the defendant, and the nature of the prosecutor's improper actions. *Id*. Even if prosecutorial misconduct occurred, the court applies a harmless error standard and will not reverse if it is beyond a reasonable doubt that the constitutional error did not contribute to the judgment. *See United States v. Muhammad*, 512 F. App'x 154, 167 (3d Cir. 2013) (citing *Zehrbach*, 47 F.3d at 1265). Reversal is warranted only "if

[the court] concludes that the prosecutor's remarks, taken in the context of the trial as a whole, prejudiced the defendant." *Id.*

This case is not one where prejudicial evidence that should have been excluded entirely was wrongly admitted into evidence. *See supra* Part III.C.2. Instead, it is one in which evidence properly admitted for a limited purpose – in this case, impeachment – was used beyond its limited purpose. The court presented a curative instruction directly following the Prosecutor's arguably improper remarks (Tr. 251), and again instructed the jury on the limited use of Brown's statement during its final charge (Tr. 287).

This brief instance of purported misconduct had, at most, a negligible impact on the outcome of the trial. This is particularly so given that the court's various instructions ameliorated any possible prejudicial effect. Moreover, as discussed previously, the convincing evidence that the Government presented against Defendant was overwhelming and supports the conviction. *See supra* Part II.A; Part III.B. The court is confident that the statement which purportedly amounted to misconduct did not contribute to Defendant's convictions. Accordingly, the court is unable to find that a manifest injustice occurred, and concludes that a new trial is not warranted.

IV.         <u>Conclusion</u>

Although the portion of the jury instruction, which was given to the jury without objection, included a definition of constructive possession for which the court assumes, without deciding, there was no evidence tending to support a

conviction thereon,[11] the court is satisfied that the jury convicted Defendant for his actual possession of the firearm on July 13, 2012. The court also presented the jury with legally accurate responses to its two questions. Moreover, the evidence presented in support of conviction, mainly in the form of eyewitness testimony that was not only internally consistent but corroborative across witnesses, was overwhelming. Even assuming the Prosecutor improperly argued that the jury use Brown's statement, which was admitted into evidence for its impeachment value, as substantive evidence of guilt, the court is confident that the jury convicted Defendant on a proper basis. For these reasons, Defendant's motion for judgment of acquittal notwithstanding the verdict and motion for new trial will be denied.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated: October 28, 2013.

---

[11] *See supra* Part III.C.3 and note 5.