THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:12-cr-0243** |
| | : | |
| **v.** | : | |
| | : | |
| **CARLOS C. HILL** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

In this criminal case, Defendant was convicted of one count of possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e).  Presently before the court are two issues on remand:  whether there has been a violation of Defendant's Sixth Amendment right to conflict free counsel, and whether *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), applies to the facts of this case.  For the reasons stated herein, the court concludes that Defendant's right to conflict free counsel has not been violated,[1] and that *Johnson* does not apply.

## I.      Background

### A. Procedural Background

On September 26, 2012, Carlos C. Hill ("Defendant") and Elijah U. Brown, Jr. ("Brown") were charged in a single indictment with two counts: possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)

---

[1] Accordingly, the court will deny Defendant's request for a new trial.  (Doc. 241).

(Count I), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j)

(Count II).  (Doc. 1.)  On March 11, 2013, prior to the commencement of

Defendant's jury trial, the Government requested that Count II be dismissed, and

the court granted that request.  On March 12, 2013, Defendant was convicted of

Count I after a trial by jury.  Defendant appealed his conviction to the United

States Court of Appeals for the Third Circuit.

On March 20, 2015, Frederick W. Ulrich, Esquire ("Mr. Ulrich"), a

federal public defender and Defendant's court-appointed counsel, advised the

Third Circuit of a potential conflict of interest regarding his representation of

Defendant.  On May 28, 2015, the Third Circuit remanded the matter to this court

for a determination of whether Mr. Ulrich's representation of Defendant presented

a conflict of interest and what relief, if any, should be granted.

In response to the order, the court appointed John Yaninek, Esquire, as

counsel for purposes of representing Defendant in connection with the conflict of

interest issue, and evidentiary hearings on the matter were held on July 15, 2015

and July 20, 2015.  Following the hearing, on August 3, 2015, Defendant filed a

request for a new trial.  (Doc. 241.)  In his brief in support thereof, Defendant

argues that the FPD's representation of Defendant during both the trial and

appellate stage of the proceedings presented a conflict of interest because the FPD

also represented a key prosecution witness on a petty offense charge.  In response,

2

the Government argues that the FPD's representation of Defendant did not present an actual conflict of interest as the prosecution witness was no longer a client of the FPD and the FPD's representation was not impaired by its former representation of the witness.

On August 3, 2015, Defendant filed an unopposed motion with the Third Circuit to expand the remand for consideration of the applicability of *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015).  The motion was granted the same day.

### B. Factual Background

#### i.  Jury Trial

On March 12, 2013, a jury convicted Defendant of being a felon in possession of a firearm.  At trial, the Government presented evidence to establish the following:

In the early morning of July 13, 2012, Tamela Corish ("Corish") and Rodney Nicholson ("Nicholson") left a party at a family member's house.  (Tr. 65.)  Corish and Nicholson drove separately—Corish drove Nicholson's vehicle, a silver BMW, and Nicholson drove Corish's Green Dodge Stratus.  (*Id*.)  On their way home, the two stopped at the City Gas and Diesel station, located on State Street in the City of Harrisburg, to purchase cigarettes.  (*Id*.)  Both Nicholson and Corish noticed a green SUV ("SUV") upon entering the gas station's parking lot.

(Tr. 66.)  Nicholson parked and exited the Dodge Stratus to enter the convenience store, leaving the vehicle unlocked with the keys in the ignition.  (Tr. 68, 100.) From inside the BMW parked to the right of the Dodge Stratus, Corish saw a young male exit the SUV and enter the driver's seat of the parked Dodge Stratus. (Tr. 101.)  In an attempt to stop the thief, Corish jumped out of the BMW and grabbed hold of the Dodge Stratus' door handle, yelling at the young male driver to stop.  (*Id.*)  Corish's attempt was unsuccessful, and she was dragged for a short distance before she let go of the door handle.  (*Id.*)  The young male continued driving the Dodge Stratus out of the parking lot and onto the roadway.  (*See* Tr. 68.)

Nicholson exited the store and saw Corish laying on the ground and the Dodge Stratus exiting the parking lot followed by the SUV.  (*Id*.)  The two then got in the BMW and pursued the SUV, which was following the Dodge Stratus.  (Tr. 68, 71.)  At some point, the Dodge Stratus turned onto a side street, out of sight from Corish and Nicholson.  (*Id*.)

Eventually, the SUV parked on the 1600 block of Park Street, and Nicholson stopped the BMW in the street parallel to the SUV.  (Tr. 71.)  A man, whom Corish and Nicholson later identified as Brown, exited from the driver's position of the SUV, and Nicholson demanded, across Corish and through the passenger window, for Brown to tell him the location of the Dodge Stratus.  (Tr.

72-73.)  Another man exited the vehicle from the passenger side and, while standing on the sidewalk, pointed a handgun at Nicholson and Corish, and directed them to leave.  (Tr. 73.)  Corish and Nicholson complied.  (*Id.*)

In response to an emergency call made by Corish, Harrisburg City police officers located the SUV parked on the 1600 block of Park Street, at which time the officer in charge directed the vehicle be towed to the police station.   Although Corish gave a statement to the responding officer, Nicholson left the area due to his being on probation, and the fact that he was driving despite his having a suspended license. (Tr. 77-78.)  During the investigation, the Harrisburg Police Bureau detectives determined that the SUV was registered to Robert Hearn ("Hearn"), who resided on the 1600 block of Park street.  (Tr. 147.)  Detective Christopher Krokos spoke with Hearn, and determined that Hearn had loaned his vehicle to Brown at the time of the incident.  (Tr. 161.)  Detective Krokos subsequently spoke with Brown, and was ultimately given consent to search Brown's residence.  (Tr. 149.) A silver handgun and magazine were found behind a mattress in Brown's bedroom.  (Tr. 150.)  During Detective Krokos's conversation with Brown, Brown implicated Defendant in the Park Street encounter.  (Tr. 160.)

Based on the investigation, Detective Timothy Carter utilized JNET, an internet-based law enforcement website that allows access to records and information, and compiled a photographic array that contained a photograph of

Defendant in addition to seven photographs of unrelated individuals with similar physical attributes.  (Tr. 180; Gov. Ex. 11; *see also* Doc. 56, p. 6 of 21 (explaining that, to create the array, JNET generates a large pool of photographs of individuals who possess similar physical attributes to those of the subject, from which the user selects the seven photographs to include based on his own judgment).)  The array was based on Defendant's name learned during the course of the investigation, rather than on the description given by Corish.  (Tr. 180.)  Corish selected Defendant's photograph from the array and identified him as the person who pointed the gun at her.  (Tr. 110-11.)

Detective Krokos arrested Defendant on September 6, 2012.  (Tr. 160.) After being advised of his rights, Defendant admitted that he was with Brown during the early morning hours of July 13, 2012, that he was present when a juvenile male stole the Dodge Stratus (Tr. 161), and that he was present when Corish and Nicholson confronted him and Brown on Park Street (Tr. 162). However, according to Defendant's statement, Brown was the individual who had the gun and told Nicholson and Corish to leave.  (Tr. 162.)

Brian LePrell, an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives who has been employed by law enforcement for over thirteen years, interviewed Corish on November 21, 2012.  (Tr. 196-97.)  Agent LePrell presented

Corish with another photographic array, which he also created by inputting

Defendant's name and information into the JNET system.[2]  (Tr. 198; Gov. Ex. 13.)

In addition to Defendant's photograph, the array contained the photographs of

seven individuals who had similar physical characteristics to those of Defendant.

(*See* Tr. 198-200.)  Corish again identified Defendant as the individual who

pointed the gun at her and Nicholson.  (Tr. 111-12.)  At trial, Agent LePrell further

testified that he presented Corish with a second photographic array, created by

inputting Brown's name into JNET.  (Tr. 202; Gov. Ex. 14.)  Corish selected

Brown's photograph and identified him as the driver of the SUV.  (Tr. 113-15,

203.)  Although Nicholson accompanied Corish to this interview, no one

encouraged Corish to select Defendant's photograph.  (Tr. 200-01.)

Over the Government's objection, Defendant presented Brown's

handwritten prison note asking another inmate to "take the gun charge for him."

(Tr. 226, 228.)  In rebuttal, the Government introduced Brown's recorded

statement to the police where he explained that Defendant was in possession of the

firearm when the victims pulled up to the car.  (Tr. 231-33.)

Following deliberations, the jury found Defendant guilty of being a felon

in possession of a firearm.  Defendant appealed.

---

[2]  Agent LePrell explained that ATF "adopted" the case, and he received the benefit of obtaining information from the local police department.  (Tr. 197.)

### ii.  Conflict of Interest Hearings

Following the Third Circuit's remand of the case, the court held

evidentiary hearings on July 14, 2015 and July 20, 2015 to determine whether the

FPD's representation of Defendant presented a conflict of interest and what, if any,

relief should be awarded.  At the hearings, Defendant called Mr. Ulrich,

Defendant's appellate counsel, and Thomas Thornton, Esquire ("Mr. Thornton"),

Defendant's trial counsel, to testify.

### 1.  Testimony of Mr. Ulrich

Mr. Ulrich began representing Defendant following his conviction at

trial in March 2013.  (July 14, 2015 N.T., p. 6.)  As part of that representation, he

conferred with Defendant regarding the issues for appeal, made strategic

determinations on the appropriate issues to be raised, filed briefs, and argued

Defendant's appeal before the Third Circuit.  (*Id.* at p. 6.)  Subsequent to his

argument, however, he became aware that a potential conflict of interest may be

present in this case due to his prior representation of Nicholson, and promptly

reported the issue to the Third Circuit.  (*Id.* at p. 7.)

During his testimony, Mr. Ulrich explained that he represented

Nicholson in 2010 and 2011 through the FPD in a petty offense matter that

potentially could have resulted in Nicholson's incarceration.  (*Id.* at pp. 7-8.)

Throughout the course of that representation, Mr. Ulrich collected confidential

information pertaining to Nicholson, and, following the resolution of the charge, preserved the file in the FPD's office.  (*Id.* at p. 12.)  He testified that he never sent a letter to Nicholson indicating that the FPD's representation of him had ceased, and that, if Nicholson had contacted him regarding a problem that arose subsequent to the petty offense matter, he would have answered his questions.  (*Id.*)  However, no such contact was ever made.

Mr. Ulrich further testified that, although Defendant and Nicholson were in adverse positions at Defendant's trial, he never obtained a waiver regarding a potential conflict of interest from either Defendant or Nicholson.  (*Id.* at p. 18.) He is aware that he has duties of professional responsibility regarding confidentiality and that his responsibility to maintain those confidences remains even after an attorney-client relationship terminates.  (*Id.* at p. 14.)

## 2.  Testimony of Mr. Thornton

As Defendant's trial counsel, Mr. Thornton cross-examined Nicholson, who he would describe as a "key witness" against Defendant.  (July 20, 2015 N.T., p. 6.)  Mr. Thornton agreed that Nicholson's identification of Defendant as the individual in possession of the firearm was a significant piece of evidence in the Government's case, and further, that Corish gave inaccurate estimations of Nicholson's height and weight following the incident.  (*Id.* at pp. 6-7.)

Mr. Thornton further testified that the Government disclosed Nicholson's criminal history prior to Defendant's trial and, through that disclosure, he likely became aware that the FPD had previously represented Nicholson. (*Id.* at pp. 7-8.) Although Mr. Thornton is confident that he discussed the potential conflict with Defendant, he did not take any notes regarding that conversation and he did not obtain a written waiver of the conflict from Defendant. (*Id.* at p. 9.) When asked by counsel for the Government if he "vigorously" cross-examined Nicholson during the trial, Mr. Thornton stated "I did the best I could." (*Id.* at p. 22.) He explained that Mr. Ulrich's prior representation of Nicholson did not factor into his decisions relating to Defendant's representation, and that he "would have done all the exact same things" at Defendant's trial had Mr. Ulrich not represented Nicholson for the petty offense charge in 2010 (*Id.* at pp. 22-23). When asked if he had disclosed any of Nicholson's confidences during his representation of Defendant, Mr. Thornton stated emphatically, "[t]hat's one thing I'm sure I did not do." (*Id.* at p. 24.) Indeed, although he had access to it, Mr. Thornton credibly testified that "to this day, I've never looked at [Nicholson's] file." (*Id.* at p. 10.)

## II.        Conflict of Counsel

Defendant seeks a new trial based on a denial of his Sixth Amendment

right to conflict free counsel during the course of his trial and appeal.  He argues

that he was denied that right as a result of the FPD's representation of both him

and a key prosecution witness against him.  The Government disagrees, arguing

that no actual conflict arose out of the FPD's representation of Defendant, namely

because Nicholson was no longer represented by the FPD at the time of

Defendant's arrest, and because there was no conflict that affected Mr. Thornton's

or and Mr. Ulrich's representation of Defendant.  The court will address the issues

raised at the hearings and its findings herein.

### A. Nicholson is a former client of the Federal Public Defender's Office

As a preliminary matter, the court finds that Nicholson is a former client

of the FPD.  Nicholson was charged with a driving under suspension offense in

2010 and was sentenced in 2011.  (July 14, 2015 N.T., pp. 11-12.)  At the time the

FPD began representing Defendant, Nicholson no longer had a pending case and

was not under any type of supervision.  Although he did not receive a termination

letter from the FPD following his sentencing and was permitted to call the FPD

with a problem, Mr. Ulrich explained that the FPD does not typically issue

termination letters and that he had no subsequent contact with Nicholson.  (*Id.* at p.

13.)  As Mr. Ulrich described it, the FPD's representation of Nicholson was "not

concurrent or current." (July 14, 2015 N.T., pp. 4, 20.")  In addition, Mr. Thornton

testified on direct examination that he and Defendant subpoenaed Nicholson for

trial.  (July 20, 2015 N.T., p. 10.)  If the FPD considered Nicholson a current client

at the time of Defendant's trial, there would have been no need for a subpoena.

### B. There is no actual conflict of interest presented by the Federal Public Defender's current representation of Defendant and former representation of Nicholson

In his request for a new trial, Defendant argues that, due to the inherently

antagonistic positions of a defendant and a prosecution witness, no "single counsel

could . . . effectively serve the interest of one party without to some extent

sacrificing [the] interests of [the other]."  (Doc. 241 at p. 5 of 10.)  As such,

Defendant contends that he should be granted a new trial based on the denial of his

Sixth Amendment right to conflict free counsel during the course of his trial and

appeal.  The court disagrees.

The Sixth Amendment to the United States Constitution guarantees that,

"[i]n all criminal prosecutions, the accused shall enjoy the right  . . . to have the

Assistance of Counsel for his defense."  This guarantee "includes two correlative

rights[:] the right to adequate representation by an attorney of reasonable

competence and the right to the attorney's undivided loyalty free of conflict of

interest."  *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988).  To

establish constitutionally inadequate representation, a defendant must demonstrate

a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

In requesting a new trial, Defendant suggests that the mere existence of a conflict warrants automatic reversal.  However, this position was specifically considered and rejected by the Supreme Court in *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).  Indeed, the *Mickens* court stated that "the proposed rule of automatic reversal when there existed a conflict that did not affect counsel's performance . . . makes little policy sense." *Id.*  Rather, under *Strickland*, a showing of effect on outcome is only presumed in circumstances of a certain magnitude, such as in cases where counsel has been denied entirely or during a critical stage of a proceeding.  *Id.*  Absent circumstances of that magnitude, a defendant must show that the representation created an "actual conflict of interest" that adversely "*affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Id.* at 171 (emphasis in original); *United States v. Sotomayor-Teijeiro*, 499 F. App'x 151, 155 (3d Cir. 2012).  In other words, "the mere possibility of a conflicting interest[ ] is not a constitutional violation. The conflict of interest must be actual." *Sotomayor-Teijeiro*, 499 F. App'x at 155 (internal quotations and citations omitted).  Prejudice will be presumed "only if the conflict has significantly affected counsel's performance—thereby rendering the verdict

unreliable, even though *Strickland* prejudice cannot be shown." *Mickens*, 535 U.S. at p. 173.

Thus, Defendant is not entitled to a new trial merely because he and a prosecution witness were both represented by the FPD.  Rather, Defendant must establish that Mr. Thornton's representation of him was somehow impaired due to a competing obligation he owed to Nicholson.  Defendant falls far short of satisfying this burden.  Although Defendant states with little elaboration that Mr. Thornton was "placed in the position of cross-examining another client of [the FPD]," he provides no examples of deficiencies in Mr. Thornton's trial strategy or cross examination of Nicholson.  Indeed, Mr. Thornton testified that his office's prior representation of Nicholson did not "factor into [his] decisions relating to Hill's representation" (July 20, 2015 N.T., pp. 11, 22-24), and a review of the trial transcript reveals a vigorous cross-examination of the witness.

Rather than attacking Mr. Thornton's trial performance, Defendant attempts to suggest that a conflict of interest exists because Nicholson may have been a confidential informant for the Government, and notes that Mr. Thornton did not deny that possibility during his testimony at the evidentiary hearing.  (*See* July 20, 2015 N.T., p. 10.)  If this were the case, the Government would have been duty bound to disclose Nicholson's informant status at trial, and Mr. Thornton would have undoubtedly cross examined Nicholson on this issue.

Finally, Defendant argues that an additional conflict has arisen on appeal because the FPD is now in a position of arguing to the Third Circuit that its former client was not credible at trial. However, this argument was previously advanced by the FPD at trial and in post-trial motions. As such, the FPD's former representation of Nicholson has not prejudiced Defendant in this regard.

Accordingly, the court finds that no actual conflict of interest was presented by either Mr. Thornton's or Mr. Ulrich's representation of Defendant, and therefore, no Sixth Amendment violation occurred.

### C. Pennsylvania Rule of Professional Conduct 1.9[2] does not prohibit the FPD from representing Hill in his federal firearms case as it is not the "same or a substantially related matter" to Nicholson's driving under suspicion petty offense charge

Pennsylvania Rule of Professional Conduct 1.9 provides, in pertinent part, as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation.

There is no actual conflict arising out of the FPD's representation of Nicholson on a driving under suspension petty offense charge and their subsequent—and undisputedly unrelated—representation of Defendant on a felony

---

[2] Local Rule 83.23.2 adopts the Pennsylvania Rules of Professional Conduct.

possession charge.  This is not a situation wherein Nicholson testified against Hill

in order to gain leniency on his own charge, as that charge was resolved before

Defendant was even arrested.[3]  As Mr. Ulrich stated during his testimony, the

FPD's representation of Defendant and Nicholson was "not related to the same

case." (July 14, 2015 N.T., p. 20.)  Because there was nothing related about these

matters, there was no violation of Rule 1.9.

### D. Nicholson was not the Government's principal witness against Defendant

Finally, the court would be remiss not to note herein its belief that,

despite Defendant's arguments to the contrary, Nicholson was not the principal

witness against Defendant.  As the jury heard at trial, shortly after the incident

occurred on July 13, 2012, Corish selected Defendant's photograph from an array

and identified him as the shooter.  Several months later in November 2012, Corish

again selected Defendant's photograph from a second array and again identified

him as the gunman.  Corish identified Defendant as the gunman for the third time

during trial.  Nicholson, who could certainly be described as a reluctant witness,

served to corroborate Corish's testimony regarding the identity of the gunman.

---

[3] To the extent that Hill suggests Mr. Thornton violated Pennsylvania Rule of Professional Conduct 1.6 by revealing information relating to the FPD's prior representation of Nicholson, this accusation is without merit.  Not only is there no information of record to suggest such a breach in confidentiality, Mr. Thornton testified that he did not disclose any confidential information about Nicholson while representing Hill. (July 20, 2015 N.T., p. 24.)  Indeed, Mr. Thornton credibly testified that he never reviewed Nicholson's file. (*Id.* at p. 10.)

Moreover, Defendant's post-arrest statement, introduced through Detective

Kroko's direct examination testimony, corroborated nearly all of Corish's and

Nicholson's account of the incident, with the exception of who pointed the gun at

Corish.

## III.  Applicability of *Johnson v. United States*

As stated above, on August 3, 2015, the Third Circuit granted

Defendant's motion to expand the scope of the remand to include consideration of

the applicability of *Johnson v. United States*, ___U.S.___, 135 S.Ct. 2551 (2015).

Defendant was convicted of violating 18 U.S.C. § 922(g).  His sentence

was enhanced under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  Section

924(e)(1) provides:

> [A] person who violates section 922(g) of this title and
> has three previous convictions by any court referred to in
> section 922(g)(1) of this title for a violent felony or a
> serious drug offense, or both, committed on occasions
> different from one another, such person shall be fined
> under this title and imprisoned not less than fifteen years
> . . .

18 U.S.C. § 924(e)(1).

Under Section 924(e)(2)(B), a violent felony is defined as follows:

> (B) the term "violent felony" means any crime
> punishable by imprisonment for a term exceeding one
> year, or any act of juvenile delinquency involving the use
> or carrying of a firearm, knife, or destructive device that
> would be punishable by imprisonment for such term if
> committed by an adult, that—

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B). The closing words of this definition, italicized above, are referred to as the Act's residual clause. *Johnson*, 135 S.Ct. at 2556.

The *Johnson* court held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the constitutional guarantee of due process. *Id.* at 2563. However, the *Johnson* court further stated that its decision regarding the residual clause "does not call into question application of the Act to the four enumerated offense, or the remainder of the Act's definition of a violent felony." *Id.* at 2563.

Defendant pled guilty of two serious drug offenses: delivery of cocaine on September 25, 1991 (*see* PSR ¶ 33) and delivery of cocaine on April 19, 2004 (*see id.* at ¶ 43). These two convictions qualify as serious drug offenses under Section 424(e)(2). On September 14, 2006, Defendant pled guilty of use of a firearm in a commission of a felony; breaking and entering with a weapon; and robbery. (*See id.* at ¶ 45.) This latter conviction falls under Section 924(e)(2)(B)(i). Thus, his Armed Career Criminal Conviction was not determined under the residual clause of Section 924(e)(2)(B)(ii).

18

Accordingly, *Johnson* is not applicable to Defendant.

**IV.** **Conclusion**

In conclusion, Defendant's claim that a conflict of interest is presented by the FPD's representation of both he and Nicholson is without merit. As discussed above, Defendant failed to demonstrate that the FPD's former representation of Nicholson impaired its current representation of Hill in an unrelated matter. Because no Sixth Amendment violation has occurred, there is no basis upon which to grant a new trial. Defendant's request for a new trial will therefore be denied. In addition, the court finds that *Johnson v. United States*, ___U.S.___, 135 S.Ct. 2551 (2015) is not applicable to Defendant.

 s/Sylvia H. Rambo_____
United States District Judge

Dated: October 29, 2015